



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Mr. Sheppard:

Opinion No. O-2601

Re: Eligibility of a member of the faculty of A. & M. College to membership in the Merit System Council of the Texas Unemployment Compensation Commission.

Your request for an opinion from this department is as follows:

"A member of the faculty of A. & M. College has been appointed as a member of the Merit System Council of the Texas Unemployment Compensation Commission.

"I am desirous of knowing if he is eligible for appointment to this position. If you should rule that he is, would he be entitled to either his expenses or a per diem while performing the duties required of him as a member?"

Texas Unemployment Compensation Commission is created by Article 5221b-8 of Vernon's Revised Civil Statutes, and the succeeding Article concerns administration of the affairs of the Commission. Subdivision (d) of this Article pertains to personnel, and is as follows:

"Subject to other provisions of this Act, the Commission is authorized to appoint, fix the compensation, and prescribe the duties and powers of such officers, accountants, attorneys, experts, and other persons as may be necessary in the performance of its duties. The Commission shall not employ

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

or pay any person who is an officer or com-
mittee member of any political party organi-
zation. The Commission may delegate to any
such person so appointed such power and
authority as it deems reasonable and proper
for the effective administration of this
Act, and may, in its discretion, bond any
person handling moneys or signing checks
hereunder."

In pursuance of this authority, the Commission
has set up a body of employees known as the Merit System
Council, designed to meet the approval of the Federal
Security Agency for minimum standards of a merit system.
This setup is as follows:

"SECTION I - MERIT SYSTEM COUNCIL

"Paragraph 1. A Merit System Council, to be governed
by the rules herein provided, shall be appointed
by the majority consent of the Commissioners.
The Council shall be composed of three (3) mem-
bers who shall be public-spirited citizens of
recognized standing with knowledge of public ad-
ministration and impartial selection of efficient
government personnel and known interest in its
improvement. They shall have had experience,
training, or have been engaged in work in the
fields of Organization and Management, Personnel,
Public Administration or related fields of in-
struction. No member shall have held political
office or have been an officer in a political
organization during the year next preceding his
appointment, nor shall he hold such office dur-
ing his term. No member of the Council shall be
otherwise employed as an official or employee of
the Commission during his term as a member of
the Council, and shall not have been an employee
of the Commission within one year next preceding
his appointment as a member of the Council.

Par. 2. It shall be the duty of the Council:

1. To advise on adoption of general policies for the
administration of merit examinations, and to act
as appeal board for applicants who have been re-

jected for examination, as provided in Article XIII.

2. To hear appeals of employees discharged or demoted.

3. To advise in the formulation of procedures in personnel administration to insure conformity with rules and policies.

4. To advise with and recommend for selection and appointment, by the Commission, a Merit System Supervisor; to advise with the Merit System Supervisor in formulation of procedures for the conduct of merit examinations; and to inspect and review the activities of the Supervisor to insure conformity with this Rule and the policies, classification and objective standards of the Commission.

5. To review the classification and compensation plans and to advise on their adoptions and subsequent revisions.

6. To promote public understanding of the purposes, policies and practices of the merit system. As a means thereto, the Council shall make a report to the Commission at least semi-annually on the operation of the merit system, including the conduct of examinations, the establishment of registers, certification from registers, promotions, salary advancements, dismissals, demotions, transfers, separations, and the maintenance of classification and compensation plans. A copy of this report shall be open to public inspection.

7. To recommend to the Commission amendments or changes in the merit system, which, in their opinion, are deemed necessary and advisable and which, in their opinion, will promote a more efficient and economical operation of the merit plan.

Par. 3. Members of the Council shall serve for a term of one (1) year, beginning with the date on which these rules are approved, or until successors have been appointed. A member appointed to fill a vacancy occurring prior to the expiration of the term shall be appointed for the remainder of such term.

Hon. Geo. H. Sheppard - Page 4

Par. 4. The Council shall elect a Chairman from
its membership. It shall also designate
the Merit System Supervisor or other em-
ployee as its Recording Secretary, whose
duty it shall be to keep a record of the
proceedings of meetings. Meetings of the
Council shall be held as often as necessary
and practicable upon call of the Chairman.
The Commission shall have the right to be
represented at all meetings, but such
representation shall be without voting
power. The Council shall adopt procedures
for the conduct of its activities.

Par. 5. Members of the Council shall receive no
salary or wage, except that they may be com-
pensated on a per diem basis of not to ex-
ceed Ten Dollars ($10.00) per day for each
day that they are in attendance at meetings
of the Council and engaged in the perform-
ance of their duties. They may also be re-
imbursed for expenses incurred while engaged
in the performance of their duties, including
traveling expenses, within the limits of the
biennial appropriation act."

Your inquiry raises at once the fundamental ques-
tion of whether or not the occupancy of the position of
faculty member to the A. & M. College, and of membership
in the Merit System Council is in anywise in violation of
Sections 33 or 40 of Article XVI of the Constitution, or
otherwise illegal because of incompatibility of the two
positions.

Section 40 of Article XVI of the Constitution
forbids any person to hold or exercise, at the same time,
more than one "civil office of emolument", with certain
exceptions not pertinent to this inquiry.

The position of a faculty member of the A. & M.
College is not a civil office. Such a member is an em-
ployee rather than a civil officer, although, of course,
his position is one of emolument. The position of faculty
member is not created by law but by contract between the
employing Board and the individual; and, furthermore, the

duties of such faculty member are not created by law, but, on the contrary, by contract; again, such faculty member does not exercise any of the functions of sovereignty whatsoever, and this is an indispensable function to a civil officer.

We have recognized these as tests in our Opinion No. 0-490, in which we cited with approval the case of State of Montana vs. Hawkins, Secretary of State, 257 Pac. 411, 53 A. L. R. 583, and annotation thereto upon the subject of "Distinction between Office and Employment." See, also, our Opinion No. 0-2226, and 34 Tex. Jur. p. 323.

Section 33 of Article XVI of the Constitution is more restrictive. It provides as follows:

> "The accounting officers of this State shall neither draw nor pay a warrant upon the Treasury in favor of any person, for salary or compensation as agent, officer or appointee who holds at the same time any other office or position of honor, trust or profit, under this State or the United States", with certain enumerated exceptions not pertinent here.

This Section extends the disqualification of a person beyond the holding or exercising of a "civil office of e-molument," so as to include the holding of any other "office or position of honor, trust or profit", under this State or the United States, except as prescribed in the Constitution.

The question recurs then, whether or not the position of a faculty member in the A. & M. College is an "office or position of honor, trust or profit", under this State. Undoubtedly, a professorship in the A. & M. College is a "position of honor, trust and profit". Such position, we think, further, is held "under this State". True it is that the faculty member is not employed directly by the State, but, on the other hand, is employed by the Board having control of the institution; but such Board is itself a body of public officers, constituting a State governmental agency for the very purpose of conducting the affairs of the College, and in every just sense, therefore, the faculty members employed by the Board, and who, of course, are paid directly by the

State, are holding positions of honor, trust and profit under the State, not immediately but mediately. The State can only act through agencies.

So that, in the opinion of this department, Section 33, Article XVI, of the Constitution does prohibit a member of the faculty of A. & M. College from receiving salary or compensation whatsoever out of the State Treasury for services rendered as a member of the Merit System Council of your board.

We think this conclusion is supported, if not compelled, by the opinion of First Assistant Attorney General Cureton (Legal Opinions, Attorney General, 1912-1914, p. 873) wherein he held as follows:

"We, therefore, beg to advise you that Honorable Will H. Mayes while acting as Lieutenant Governor of this State, could not legally hold the position or employment of a professor of journalism in the University of Texas."

Moreover, our conclusion finds support and authority in the opinion of Mr. Taylor, Assistant Attorney General, a conference opinion during General Looney's administration (Opinions, Book 30, p. 394) wherein it was held that:

"Should one of the clerks in a department be appointed a member of a board of managers of an eleemosynary institution, then the accounting officers of this state would be prohibited by the above Section from drawing or paying any warrant upon the Treasury for the salary of such a clerk."

It will be observed that in the two cases just cited the question propounded and answered by the Attorney General's Department was with respect to the rights of an employee of a department to receive compensation while at the same time holding and enjoying a public office under the law. The precise question whether or not the public officer holding at the same time a position of honor and trust under the state could receive compensation from the

State Treasury was not presented or decided. That is, however, the precise question presented in this case. That such officer is denied the right of salary or compensation we think is clear beyond doubt under the express terms of Section 33. The two cases above cited are also authority for the proposition that the employee in such a case is likewise denied compensation from the state. This conclusion would appear to be corollary to the main conclusion that the two positions are incompatible under the Constitution and that the person occupying such dual positions would therefore not be entitled to compensation from the State with respect to either position, whether of officer, agent, appointee, or employee solely.

However that may be, we are of the opinion that in any event Section 33 of Article XVI does prohibit the payment of compensation out of the State Treasury to an officer, such as the one under consideration here, who at the same time likewise holds or attempts to hold a position of honor or trust under the state.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED AUG 22, 1940

FIRST ASSISTANT
ATTORNEY GENERAL

By

Ocie Speer
Assistant

OS:MR


THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE